TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-05-00052-CR




William Leon Alexander, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2003-461, HONORABLE JACK ROBINSON, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


                        William Leon Alexander was convicted of three counts of indecency with a child. 
See Tex. Pen. Code Ann. § 21.11 (West 2003). In three issues on appeal, Alexander contests the
legal and factual sufficiency of the evidence supporting his convictions and asserts that his trial
counsel’s failure to file a motion to recuse the district judge constituted ineffective assistance of
counsel. We will affirm the judgment of the district court.

BACKGROUND
                         Based on alleged incidents involving four different female minors, the State charged
Alexander with eight counts of indecency with a child. He was convicted of three counts, I, II, and
VIII, from which he appeals.
                        Counts I and II of the indictment alleged that, on or about May 18, 2002, Alexander
touched, respectively, the breast and genitals of A.T. with the intent to arouse and gratify his sexual
desire. The jury heard evidence that, on May 18, 2002, 12-year-old A.T. accompanied her mother
to work. A.T. was planning on working at her mother’s office over the summer to answer “the
phones and stuff.” A.T. testified that she and Alexander, who worked with her mother, were alone
in the office most of the day and, at one point in the afternoon, Alexander called A.T. upstairs to his
office and asked her to sit on his lap. A.T. testified that she did so. Then, according to A.T.,
Alexander began rubbing her stomach underneath her shirt and “moved his hand up and touched the
lower part” of her chest and one of her breasts. A.T. testified that Alexander quit touching her when
the phone rang and she “jumped up fast” to answer it. The caller was A.T.’s mother, who was
posing as a customer and testing A.T. to see how well she answered the phones. A.T. testified that
after she finished speaking with her mother, she went downstairs. Alexander followed her. A.T.
testified that she sat on the couch, and Alexander sat down next to her and began rubbing the inside
of her thighs. A.T. testified that Alexander then touched her “vaginal area” where there was “a hole
in her stockings.” A.T. then pushed his arms away, got up from the couch, and went to the kitchen
area. Again, Alexander followed her. A.T. testified that Alexander “came up behind [her] and he
pushed his front body up against [her] back.” A.T. described Alexander’s actions as “like two dogs.” 
To get away from Alexander, A.T. testified that she pretended to see her teacher outside the window. 
After that, he let her go. Then, according to A.T., Alexander grabbed her and “lifted her up” toward
the ceiling. At around this time, A.T.’s mother returned to the office, and A.T. testified that her
mother saw her with Alexander in the kitchen and told them to “stop goofing around.” When she
was alone with her mother, A.T. told her what Alexander had done to her.
                        Count VIII of the indictment alleged that, on or about March 28, 2002 through April
8, 2002, Alexander touched the breast of M.C. with the intent to arouse and gratify his sexual desire. 
The jury heard evidence that between March 28 and April 8 of 2002, 13-year-old M.C. was staying
with her father in Canyon Lake during Spring Break. M.C. testified that one night she was at a bar
with her father, some of her friends, and Alexander, who was a friend of her father. M.C. testified
that around closing time, her father gave her permission to ride home in Alexander’s convertible. 
As they were driving, Alexander pulled over and asked M.C. if she wanted to drive. M.C. testified
that she did and that Alexander had her sit on his lap steering the car while Alexander operated the
accelerator and the brake. M.C. testified that shortly thereafter Alexander began touching M.C.’s
“belly button ring” underneath her blouse and then her breasts underneath her bra. M.C. testified
that Alexander was calling her “Joann” while they were driving. Joann was the name of Alexander’s
girlfriend. M.C. testified that she did not tell her father about this incident until after her father, who
also worked with A.T.’s mother, told M.C. about A.T.’s accusations against Alexander. 
                        The jury found Alexander guilty of counts I, II, and VIII of the indictment. 
Punishment was assessed as five years’ confinement for count I, eight years’ confinement for count
II, and five years’ confinement for count VIII, with the sentences to be served concurrently. This
appeal followed.

DISCUSSION
Evidentiary sufficiency
                        In his first two issues, Alexander challenges the sufficiency of the evidence
supporting his convictions. His second issue attacks the legal sufficiency of the evidence that, with
respect to each count, he acted with the intent to arouse and gratify his sexual desire. Alexander’s
first issue contests the factual sufficiency of the evidence that he actually committed the acts of
touching made the basis of counts I, II, and VIII of the indictment.

       Standard of review
                        When there is a challenge to the legal sufficiency of the evidence to sustain a criminal
conviction, we consider whether a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim.
App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the
trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable
inferences in a manner that supports the verdict. See Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). It is not necessary that every fact point directly and independently to the
defendant’s guilt; it is enough if the conclusion is warranted by the combined and cumulative force
of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993). We consider even erroneously admitted evidence. Id. The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the
exclusive province of the jury. Id.
                        In a factual sufficiency review, we view the evidence in a neutral light and will set
aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the
contrary evidence is so strong that the jury could not have found all the elements of the crime beyond
a reasonable doubt. Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is
clearly wrong and unjust if the “jury’s finding is ‘manifestly unjust,’ ‘shocks the conscience,’ or
‘clearly demonstrates bias.’” Id. (quoting Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997)). All the evidence is considered equally, including the testimony of defense witnesses and the
existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992,
no pet.). Although due deference must be accorded the fact-finder’s determinations, particularly
those concerning the weight and credibility of the evidence, the reviewing court may disagree with
the result in order to prevent a manifest injustice. Johnson v. State, 23 S.W.3d at 9. The evidence
will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the
contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); see Johnson, 23 S.W.3d at 11.

       Legal sufficiency
                        A person commits the offense of indecency with a child if the person engages in
sexual contact with a child or causes a child to engage in sexual contact, if the child is younger than
17 years and is not the person’s spouse. Tex. Pen. Code Ann. § 21.11(a)(1) (West 2003). “Sexual
contact” means any touching by a person, including touching through clothing, of the anus, breast,
or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual
desire of any person. Id. § 21.11(c)(1). Alexander claims that the State failed to prove beyond a
reasonable doubt that Alexander acted with the intent to arouse or gratify his sexual desire. 
                        Intent may be inferred from the acts, words, and conduct of the accused and from the
circumstances surrounding the acts in which the accused engaged. Hernandez v. State, 819 S.W.2d
806, 810 (Tex. Crim. App. 1991); DeLeon v. State, 77 S.W.3d 300, 312 (Tex. App.—Austin 2001,
pet. ref’d). In counts I and II of the indictment, Alexander’s intent to arouse or gratify his sexual
desire may be inferred from A.T.’s testimony that when Alexander pushed his body against her back
in the kitchen, it felt “like two dogs,” and from A.T.’s testimony that Alexander followed her around
the office, touching her inappropriately not once, but three different times. A.T. testified that
Alexander did not merely touch her, but that he “rubbed” her stomach and her thighs. A rational jury
could infer that “rubbing” someone’s body in the manner that Alexander rubbed A.T. was done with
the intent to arouse or gratify one’s sexual desire.
                        In count VIII of the indictment, Alexander’s intent to arouse or gratify his sexual
desire may be inferred from M.C.’s testimony that Alexander called her “Joann” while he was
touching her, which is the name of Alexander’s girlfriend. M.C. testified that at one point while he
was touching her breasts, Alexander said, “Oh, I miss you, Joann.” Alexander’s intent may also be
inferred from the manner in which he touched M.C. Although M.C. testified that she did not believe
Alexander intended to arouse or gratify his sexual desire, this testimony is nothing more than the
victim’s speculative opinion of Alexander’s state of mind. A rational jury could disregard M.C.’s
claimed perception of Alexander’s intent and focus instead on the other probative evidence
concerning Alexander’s acts, words, and conduct. 
                        Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational jury could have found beyond a reasonable doubt that Alexander acted with intent to arouse
or gratify his sexual desire when engaging in the conduct made the basis of counts I, II, and VIII.

       Factual sufficiency 
                        We have previously detailed the evidence supporting the verdict. The evidence
contrary to the verdict consists of A.T.’s admission during cross-examination that she had testified
during a pretrial hearing that Alexander touched her stomach but “not much anywhere else.” Also
on cross-examination, when asked if she ever claimed that Alexander “fondled” her breast, A.T.
responded, “No.” A.T. also admitted on cross-examination that she “couldn’t tell exactly where”
Alexander touched her on her vaginal area. Furthermore, A.T.’s mother testified on cross-examination that the hole in A.T.’s stockings, through which Alexander allegedly touched her
genitals, was not directly over A.T.’s vaginal area.
                        On cross-examination, M.C. testified that she was “forced” to make a statement
against Alexander because the police told her that her mother would go to jail if she refused to
cooperate. M.C. also testified on cross-examination that she did not believe Alexander touched her
on purpose and that he did not intend to arouse or gratify his sexual desire by touching her. M.C.
believed that Alexander was simply intoxicated and that he was mistaking her for his girlfriend,
Joann. However, on redirect examination, M.C. testified that she did not believe Alexander’s hands
just “accidentally” slipped under her bra, but that his touching was “an intentional act.”
                        Alexander testified that A.T. wanted to wrestle with him while they were at the office,
but that he told her no because it was “not appropriate.” Alexander denied asking A.T. to sit on his
lap and testified that she never sat on his lap. Alexander also denied rubbing A.T.’s stomach. He
testified that he was not in the kitchen area alone with A.T. and that he did not rub his body against
hers. Alexander also denied touching A.T.’s legs and putting his hand in a hole in her stockings. 
                        Alexander testified that he did let M.C. drive his convertible that night and that she
sat on his lap. He testified that he joked with M.C. about her belly button ring, and he commented
to her that Joann also had a belly button ring. Alexander denied touching M.C.’s breasts.
                        Considering all of the evidence in a neutral light, and giving due deference to the
jury’s resolution of conflicts in the evidence, we do not believe the proof of guilt is too weak or the
contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. See Zuniga,
144 S.W.3d at 484-85. We overrule Alexander’s first and second issues.

Ineffective assistance of counsel
                        In his third issue, Alexander asserts that trial counsel’s failure to file a motion to
recuse the district judge constituted ineffective assistance of counsel. The basis for the motion to
recuse, according to Alexander, was the likelihood that the judge would impose a “harsh sentence.” 
In a previous case, the same judge had sentenced Alexander to a maximum term of 20 years’
confinement for an aggravated assault that was, in Alexander’s opinion, “relatively minor.” 
Alexander claims that counsel’s failure to file a motion to recuse deprived him of a fair trial.
                        To prevail on a claim of ineffective assistance of counsel, a defendant must show that
counsel made such serious errors that he was not functioning effectively as counsel and that these
errors prejudiced the defendant’s defense to such a degree that he was deprived of a fair trial. See
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 988 S.W.2d 770, 771-72
(Tex. Crim. App. 1999). We must indulge a strong presumption that counsel’s conduct fell within
the wide range of reasonable professional assistance. See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the alleged
ineffectiveness. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the
record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel’s actions. Id.
                        Alexander’s claim that counsel should have filed a motion to recuse the district judge
finds no support in the record. While a judge’s arbitrary refusal to consider the entire range of
punishment may be a proper ground for a motion to recuse, see McClenan v. State, 661 S.W.2d 108,
110 (Tex. Crim. App. 1983); Roman v. State, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th
Dist.] 2004, pet. ref’d), there is no evidence in this case that the judge’s prior sentencing decision
was arbitrary or that the judge refused to consider the entire range of punishment. Simply because
the judge imposed the maximum sentence in a prior aggravated assault case does not mean that he
is biased against the accused or that his previous decision was arbitrary. See Kemp v. State, 846
S.W.2d 289, 306 (Tex. Crim. App. 1992) (“the presumption of judicial impartiality cannot be
overcome by the mere assertion of bias based solely on a trial judge’s previous judicial relationship
with a defendant.”); see also United States v. Clark, 605 F.2d 939, 941 (5th Cir. 1979) (it would be
“untenable” to hold that judge who had once tried defendant was thereafter barred from trying same
defendant on other, unrelated, charges).
                        Furthermore, absent an explanation of trial counsel’s reasons for failing to file a
motion to recuse the trial judge, we cannot presume that counsel’s performance was deficient. 
Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (citing Freeman v. State, 125 S.W.3d
505, 506-07 (Tex. Crim. App. 2003)). Filing a motion to recuse, especially without adequate cause,
could have adversely impacted Alexander’s defense. See Hull v. State, 67 S.W.3d 215, 221 (Tex.
Crim. App. 2002) (Johnson, J., dissenting). Therefore, not filing a motion to recuse could have been
a strategic move on the part of trial counsel.
                        We also note that, even if there had been a legitimate basis for filing a motion to
recuse, an attorney’s mere failure to file a pretrial motion, including a motion to recuse, shall not be
categorically deemed ineffective assistance of counsel. See Madden v. State, 911 S.W.2 d 236, 241
(Tex. App.—Waco 1995, pet. ref’d); Martinez v. State, 824 S.W.2d 688, 690 (Tex. App.—El Paso
1992, pet. ref’d) (citing Passmore v. State, 617 S.W.2d 682, 685 (Tex. Crim. App. 1981)). An
examination of the entire record reveals that counsel was an effective advocate for his client
throughout the proceedings, and succeeded in acquitting Alexander of five of the eight charges that
were pending against him. We overrule Alexander’s third issue.

CONCLUSION
                        Having overruled Alexander’s issues on appeal, we affirm the judgment of the district
court.
 
                                                                                                                                                            
                                                                        Bob Pemberton, Justice
Before Chief Justice Law, Justices Patterson and Pemberton
Affirmed
Filed: July 21, 2006
Do Not Publish