Eduardo **AROCENA**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**No. 89 Civ. 1122 (RJW).**

United States District Court,
S.D. New York.

Sept. 12, 1989.

Miller, Hochman, Meyerson & Schwartz, Jersey City, N.J. (Gerald D. Miller, of counsel), Markewich, Friedman & Markewich, New York City (Daniel Markewich, of counsel), for petitioner.

Benito Romano, U.S. Atty. S.D. New York, New York City (Michael L. Tabak, of counsel), for respondent.

## OPINION

ROBERT J. WARD, District Judge.

Petitioner, Eduardo Arocena, moves pursuant to 28 U.S.C. § 2255 to vacate the conviction and sentence imposed upon him on the grounds that he was denied (1) due process of law by partisan judicial interference during his trial and (2) a fair trial due to ineffective assistance of counsel. Petitioner also moves, pursuant to 28 U.S.C. § 455(a), for the Court to disqualify itself from considering the section 2255 motion. For the reasons that follow, the motion to disqualify the Court and the motion to vacate the conviction and sentence are denied.

## BACKGROUND

Petitioner, the leader of a terrorist organization known as "Omega 7", was convicted on September 22, 1984, after a six week jury trial, on the following charges: first degree murder of a diplomat; two counts of conspiracy to murder diplomats; attempted murder of a diplomat; conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act (RICO); interstate transportation of explosives with intent to cause injury; three counts of malicious damage by explosives to property used in commerce with personal injury resulting; malicious damage by explosives to property used in commerce; placing a destructive substance near an aircraft or air terminal; unlicensed interstate transportation of explosives; six counts of possession of unregistered bombs; four counts of destruction of property within the United States used by foreign governments; conspiracy to, *inter alia*, use explosives to commit felonies; conspiracy to knowingly make false material declarations under oath before a grand jury and obstruct the administration of justice; and perjury before a grand jury.

On November 9, 1984, petitioner was sentenced to serve consecutive sentences of life imprisonment and thirty-five years im-

prisonment by this Court.[1] The conviction was upheld by the Court of Appeals for the Second Circuit in *United States v. Arocena,* 778 F.2d 943, 944 (2d Cir.1985), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986), and Arocena's grounds for appeal were found to be "entirely devoid of merit."[2] The Second Circuit concluded that:

> Overall, the Government's case against Eduardo Arocena was overwhelming and impressive. Arocena's interviews with FBI agents and his lengthy taped conversations with Agent Wack, combined with the copious physical evidence against him and the testimony of eighty-five witnesses, piece together the details of a terrorist campaign shocking in its ferocity and persistence.

*Id.* at 950.[3]

## DISCUSSION

Preliminarily, the Court must address petitioner's motion that the Court disqualify itself from deciding the motion to vacate his conviction and sentence. Petitioner asserts that disqualification is appropriate under 28 U.S.C. § 455(a) which provides that:

> any ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The purpose of section 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety. *Hardy v. United States,* 878 F.2d 94, 96 (2d Cir.1989). The standard used to determine if recusal is appropriate under section 455

is an objective one. *E.g. In re Int'l Business Machines Corp.,* 618 F.2d 923, 929 (2d Cir.1980). Recusal is warranted if a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned. *See Apple v. Jewish Hospital and Medical Center,* 829 F.2d 326, 333 (2d Cir.1987).

Section 455(a) provides broader grounds for disqualification than the recusal provisions contained in 28 U.S.C. §§ 144 and 455(b)(1)[4], but "[w]hen, as here, a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice [which arose from the proceedings in court], those broader grounds are not implicated." *Id.*

Accordingly, section 455(a) requires that the source of the alleged judicial bias or prejudice originate outside the judicial context. *In re Int'l Business Machines Corp., supra,* 618 F.2d at 929.

> We conclude that under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings.... [T]he bias which requires recusal must be personal and cannot rest upon trial court rulings or conduct....

*Id. See also United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980) (§ 455(a) does not provide grounds for recusal based on allegations of bias or prejudice stemming from district judge's courtroom remarks); *Markus v. United States,* 545 F.Supp. 998, 999 (S.D.N.Y.1982) (alleged bias sufficient for recusal must arise by virtue of some factor that occurs outside the events in the

---

**1.** Arocena was subsequently tried and convicted in the Southern District of Florida on other charges and was sentenced to an aggregate of twenty years imprisonment, consecutive to the sentence imposed by this Court.

**2.** Familiarity with the Second Circuit's opinion in *Arocena* is presumed.

**3.** In *Arocena,* the Second Circuit highlighted the nature and extent of the criminal activities of petitioner based on the voluminous evidence produced at trial. *United States v. Arocena,* 778 F.2d at 944–48. The Court will not repeat the sordid details in this decision.

**4.** Section 144 prescribes recusal when a party files a "timely and sufficient affidavit" indicating the judge has "a personal bias or prejudice"

against the moving party or in favor of an adverse party. 28 U.S.C. § 144. Section 455(b)(1) provides that a judge should disqualify himself or herself in any proceeding where he or she has "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Both provisions are construed in the same manner and require the basis of the alleged bias or prejudice to emanate from an extrajudicial source, not conduct which arises in the judicial context. *Apple v. Jewish Hospital and Medical Center, supra,* 829 F.2d at 333. Petitioner concedes that disqualification under either 28 U.S.C. §§ 144 or 455(b)(1) is inappropriate because there is no allegation of an extrajudicial source of bias or prejudice.

trial itself), *aff'd without opinion*, 742 F.2d 1444 (2d Cir.1983).

Petitioner does not assert that the Court's alleged bias arose from an extrajudicial source. Instead, without mentioning the above authority, petitioner argues that section 455(a) provides for recusal based solely on allegations of bias and prejudice arising from conduct in the trial setting. Petitioner relies on cases outside this circuit which identify the general rule that bias or prejudice sufficient to disqualify a judge must arise from extrajudicial sources, but go on to state a limited exception to this rule when a judge's remarks demonstrate such pervasive bias or prejudice that it constitutes bias against a party. *See Wiley v. Wainwright*, 793 F.2d 1190, 1193 (11th Cir.1986) (citing *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976)); *Quachita National Bank v. TOSCO Corp.*, 686 F.2d 1291, 1300 (8th Cir.1982) *aff'd in part on rehearing en banc*, 716 F.2d 485 (1983); *Whitehurst v. Wright*, 592 F.2d 834, 838 (5th Cir.1979).[5]

■ The Court, in keeping with the spirit of section 455(a), and out of its own belief in the seriousness of a charge of partiality, has endeavored to examine the substance of the disqualification motion despite the absence of allegations that any bias or prejudice arose from an extrajudicial source. After reviewing petitioner's argument, the Court concludes that the motion for disqualification is utterly without merit.

Petitioner relies on a short excerpt from the six week trial to support his claim that the Court's impartiality in deciding the section 2255 motion might reasonably be questioned. Trial Transcript ("Tr.") at 1111–12, 1114–15. Petitioner argues that a comment by the Court indicated a view as to Arocena's guilt during the course of the trial. Petitioner, quoting selectively from the transcript, fails to provide any context for the quoted colloquy between the Court and counsel, thereby conveniently ignoring the fact that these comments occurred: (1) outside the presence of the jury, (2) during the course of the Government's presentation of its case in chief, (3) at the end of a short trial day, approximately two weeks into the trial which lasted six weeks and consumed almost two thousand eight hundred (2800) pages of transcript, (4) during a discussion of scheduling matters for the Government's remaining witnesses, and (4) in the context of a suggestion by the Court that the Government might want to shorten its presentation of proof. Tr. 1093–1115. Moreover, petitioner fails to acknowledge that the exchange he cites between the Court and counsel was immediately followed by an explanation from the Court that it was not attempting to substitute its judgment for that of the jury, but only to preside fairly in the case and encourage the parties to continue as expeditiously as they felt was proper. Tr. 1115. The Court finds no reasonable construction of these comments which could indicate a bias against petitioner such as to bring the Court's impartiality into question in deciding the section 2255 motion.

■ One other point is worth noting in analyzing the recusal request on petitioner's section 2255 motion. The determination of the motion to disqualify is necessarily interrelated with the merits of petitioner's allegation that he was denied due process and a fair trial due to partisan interference by the Court. Part of petitioner's challenge to his conviction and sentence requires the Court to review its own actions to determine if a constitutional violation occurred. This review, in and of itself, is perfectly appropriate, and does not impugn the Court's impartiality in contraven-

---

5. At no time does petitioner mention the general rule enunciated in these cases concerning the need for allegations of bias or prejudice to be based on extrajudicial sources, or the limited nature of the exception to this rule.

The Second Circuit, in discussing recusal under section 455(b)(1), noted that while "conduct in the course of a trial might be relevant to indicate a bias that can only be explained as a personal prejudice against a party, the fact is that no case in this circuit has ever found such bias on the basis of a trial court's rulings or conduct. This reticence ... is well justified." *In re International Business Machines Corp., supra*, 618 F.2d at 928 n. 6.

tion of section 455(a). *See e.g., Gravenmier v. United States,* 469 F.2d 66, 69 (9th Cir.1972) (it is well established that the trial judge can hear and decide a motion pursuant to 28 U.S.C. § 2255 even when the section 2255 motion is based on a claim that the trial judge should have disqualified himself from presiding over the trial); *Walters v. United States,* 404 F.Supp. 996, 997–98 (S.D.N.Y.1975). Furthermore, the bare allegation by a petitioner of partiality by the Court in a section 2255 motion cannot have the effect of eviscerating the statutory scheme for challenges to federal sentences which expressly provides for review by the sentencing court in the first instance. 28 U.S.C. § 2255.

Accordingly, recusal is not warranted in these circumstances under any reading of section 455(a) and the motion to disqualify the Court from considering the section 2255 claim is denied. The Court now turns to the merits of petitioner's section 2255 motion.

### A. *28 U.S.C. § 2255*

Section 2255 provides a mechanism for federal prisoners to vacate convictions and sentences imposed in violation of the laws and Constitution of the United States. *See Hardy v. United States,* 878 F.2d 94, 97, (2d Cir.1989).

> Generally, relief is available under section 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."

*Id.* (quoting *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1975) (quotation omitted)). In support of his section 2255 motion, petitioner asserts that he was denied due process of law by alleged partisan judicial interference at trial and that he was denied a fair trial because of inadequate assistance of counsel.

#### 1. *Partisan Judicial Interference:*

█ Petitioner argues that the Court's questioning of certain witnesses, including Arocena, favored the Government. This claim is meritless. The Court has an active responsibility to ensure that the issues at trial are clearly presented to the jury and therefore a duty to participate in the questioning of witnesses to the extent necessary to clarify their testimony. *See United States v. DiTommaso,* 817 F.2d 201, 221 (2d Cir.1987); *United States v. Pisani,* 773 F.2d 397, 403 (2d Cir.1985); *United States v. Robinson,* 635 F.2d 981, 986 (2d Cir.1980) *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981). Petitioner has pieced together several instances where the Court asked questions of witnesses, none of which, in the Court's view, present any indication of favoritism by the Court toward the Government, or partisan interference with the trial.

Instead, each of the passages cited by petitioner, which the Court notes were once again incompletely and misleadingly set forth in petitioner's motion papers, reflect the Court's duty to clarify vague, ambiguous, or confusing testimony. Furthermore, after the Court's limited questioning of Arocena, the Court instructed the jury as follows:

> Incidentally, ladies and gentlemen, I would like to instruct you that the questions asked by the Court are asked for clarification. They do not mean and they should not mean to you that I take a position one way or another.

Tr. at 2442.

Similarly, the Court's statement to counsel outside the presence of the jury upon which petitioner based his recusal motion, and petitioner's accusations that the Court treated trial counsel unfairly and bolstered the testimony of the Government's witnesses, have no foundation in the record and are wholly inadequate to support a claim that petitioner's constitutional rights were violated.

Furthermore, in reviewing a claim of judicial misconduct the court must determine whether the trial judge's behavior was so prejudicial that it denied defendant a fair, as opposed to a perfect, trial. *United States v. Gurary,* 860 F.2d 521, 527 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109

S.Ct. 1931, 104 L.Ed.2d 403 (1989). In view of the abundant evidence of Arocena's overwhelming guilt, *United States v. Arocena, supra,* 778 F.2d at 950, the effect of any statements by the Court, or the questioning of witnesses by the Court, was at most harmless and constituted insufficient prejudice to amount to a constitutional violation. *See United States v. Robinson, supra,* 635 F.2d at 986; *United States v. Boatner,* 478 F.2d 737, 742 (2d Cir.) *cert. denied,* 414 U.S. 848, 94 S.Ct. 136, 38 L.Ed.2d 96 (1973). Accordingly, petitioner is not entitled to any relief under section 2255 on the ground of partisan judicial interference with his trial.

### B. *Ineffective Assistance of Counsel:*

The Supreme Court has articulated a two-part standard for evaluating claims of ineffective assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Judicial scrutiny of trial counsel's performance is highly deferential and there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91,

101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Furthermore,

> [t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.... And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not be later challenged as unreasonable.

*Id.* 466 U.S. at 691, 104 S.Ct. at 2066.

"The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. If petitioner cannot make an adequate showing of actual prejudice to satisfy the second prong of the *Strickland* test, this Court need not even inquire into the adequacy of counsel's conduct. *Id.* at 697, 104 S.Ct. at 2069–70.

Petitioner propounds three instances which he claims constituted ineffective assistance of counsel: (1) counsel's direct examination of Arocena, (2) counsel's alleged failure to file a motion to suppress Arocena's confession, and (3) counsel's failure to call other witnesses, aside from Arocena, on his behalf. Each of these arguments is factually disingenuous and legally untenable. Moreover, none of the alleged misconduct by counsel could have resulted in constitutional prejudice to petitioner given the overwhelming evidence of his guilt.

 Arocena's testimony at trial was the result of his own tactical decision to take the stand in his defense. Arocena's counsel specifically advised him not to testify, but this advice was rejected.[6] Petitioner

---

6. Fearful that Arocena intended to give perjured testimony and unable to dissuade him from taking the stand, trial counsel for Arocena put their concerns on the record in an *ex parte, in camera* conference with the Court on September 10, 1984. The transcript of this proceeding

was sealed at the time, but was opened by Order dated April 4, 1989, following the filing of petitioner's section 2255 motion. Petitioner has not challenged the action of defense counsel in requesting this *ex parte* session with the Court.

cannot now invoke the effects of that testimony as a ground for arguing that his counsel provided ineffective assistance, when they acted only at his direction. In addition, the questions asked of Arocena on his direct examination fell well within the permissible range of deference to be afforded trial counsel's actions, given Arocena's determination to testify against his counsel's advice.

■ Petitioner's claim that counsel did not file a motion to suppress his confession is belied by the record. Such a motion was filed prior to trial, but Arocena refused to admit that he had made any confession. Transcript of Hearing held July 11, 1984 at 23–24, 29, 31–32 ("Tr. July 11, 1984"). Therefore, defense counsel could not continue to argue for its suppression and the motion was denied by the Court. Tr. July 11, 1984 at 31–33. Trial counsel's actions were hardly unreasonable under prevailing professional norms given the totality of the circumstances. Furthermore, petitioner has offered no credible argument that a suppression motion would have been successful or, if successful, that it would have altered the outcome of the trial, both necessary elements for an ineffective assistance of counsel claim based on the failure to file such a motion. *Cf Kimmelman v. Morrison,* 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986).

■ Finally, petitioner's challenge to defense counsel's failure to call witnesses other than Arocena must fail. The decision whether to call any witnesses on behalf of a defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). If the decision is reasonably made, it will not constitute a basis for an ineffective assistance claim. *Id.* Petitioner has failed to advance a persuasive argument that trial counsel's decision not to call additional witnesses was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation. In addition, petitioner does

not explain how any witnesses he now asserts defense counsel should have called at trial could have affected the result of the trial, given the overwhelming evidence of his guilt.

Indeed, it is the overwhelming nature of the evidence of Arocena's guilt adduced at trial which precludes all of petitioner's arguments that the alleged instances of misconduct by trial counsel resulted in prejudice sufficient to constitute a constitutional violation. There is no substance to petitioner's ineffective assistance of counsel claim. The motion under section 2255 must, therefore, be denied.

## CONCLUSION

The Court finds there is no merit to petitioner's recusal motion under section 455(a) or his motion to vacate his conviction and sentence under section 2255. Accordingly, both motions are denied.

It is so ordered.