**UNITED STATES of America, Plaintiff,**

**v.**

**William P. REILLY, Defendant.**

**Cr. A. No. 93–8–JJF.**

United States District Court, D. Delaware.

May 13, 1993.

Richard G. Andrews, Asst. U.S. Atty., Wilmington, DE and Howard P. Stewart and Christina Steck, U.S. Dept. of Justice, Washington, DC, for the U.S.

Marc B. Tucker and Scott E. Schroeder of Skadden Arps Slate Meagher & Flom, Wilmington, DE, for defendant Reilly.

Joseph A. Hurley, Wilmington, DE, for defendant Dowd.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Defendant Reilly filed this Motion To Dismiss Information on February 19, 1993. D.I. 7. The Information, which was issued on January 28, 1993, charges Reilly with one count of violating 33 U.S.C. § 1411(a), a Class A misdemeanor. D.I. 1. The Information alleges that the defendant "did, without a permit, knowingly transport and cause to

---

be transported, on the ship M/V *Khian Sea,* material from the United States for the purposes of dumping said material into ocean waters." *Id.*

Reilly contends that the Information charging him with a violation of 33 U.S.C. § 1411(a) is insufficient because it fails to charge him with "knowingly" violating § 1411(a). Reilly argues that 33 U.S.C. § 1415(b), the criminal penalty section of the Ocean Dumping Act, imposes criminal liability only if he violated § 1411(a) with knowledge of the provisions in § 1411(a). Thus, because he has not been charged with violating § 1411(a) with knowledge of the provisions of § 1411(a), Reilly maintains that the Information must be dismissed.

The Government contends that the term "knowingly violates" in § 1415(b) must be construed as merely requiring that the acts constituting the offense be done consciously. The Government argues that this is the construction of similar terms used in other public welfare statutes.

The Marine Protection, Research and Sanctuaries Act of 1972 ("Ocean Dumping Act"), 33 U.S.C. § 1401 *et seq.,* prohibits the transportation, without a permit, of any material from the United States for the purpose of dumping it into ocean waters. The Act defines "material" as matter of any kind including, but not limited to, solid waste, incinerator residue, garbage, and industrial and municipal waste. 33 U.S.C. § 1402(c).

The provisions at issue in this case are § 1411(a) and § 1415(b). Section 1411(a) provides, in pertinent part:

**Prohibited Acts:**

(a) Except as may be authorized by a permit issued pursuant to section 1412 or section 1413 of this title, and subject to regulations issued pursuant to section 1418 of this title,

(1) *no person shall transport from the United States* and

(2) in the case of a vessel or aircraft registered in the United States or flying the United States flag ... no person shall transport from any location

*any material for the purpose of dumping it into ocean waters.*

33 U.S.C. § 1411(a) (emphasis added). Section 1415(a-b) provides, in pertinent part:

**(a) Assessment of civil penalty by Administrator; remission or mitigation; court action for appropriate relief**

Any person who violates any provision of this subchapter, or of the regulations promulgated under this subchapter, or a permit issued under this subchapter shall be liable to a civil penalty of not more than $50,000 for each violation to be assessed by the Administrator....

**(b) Criminal Penalties**

In addition to any action which may be brought under subsection (a) [civil penalties] of this section, a person who *knowingly violates* this subchapter, regulations promulgated under this subchapter, or a permit issued under this subchapter shall be fined not more than $50,000, or imprisoned for not more than one year, or both.

33 U.S.C. § 1415(b) (emphasis added).

The first step in construing a statute is to examine the words of the statute. *See, e.g., United States v. Johnson & Towers, Inc.,* 741 F.2d 662, 665 (3d Cir.1984), *cert. denied sub nom.,* 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985). Because there is more than one plausible construction of the term "knowingly violates," the Court will next consider the term in the context of the entire statute.

The main distinction between the civil provision and the criminal provision of § 1415 is that under the civil provision there is strict liability for violating either the statutes, regulations or permits issued thereunder. Reilly contends that because § 1411(a) prohibits transporting prohibited material "for the purpose of dumping it into the ocean," it requires proof of intent. Thus, a civil penalty may only be imposed after proving that intent. Reilly argues, therefore, that the Government's construction of "knowingly violates" eviscerates the distinction between the civil and criminal provisions of § 1415 because both the civil and criminal provisions would require the same basic proofs. Reilly argues that such a construction impermissibly renders the provisions "redundant or largely superfluous." *See Colautti v. Frank-*

*lin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979). However, Reilly fails to acknowledge that, while § 1411(a) appears to prohibit only conscious acts, the regulations promulgated pursuant to § 1411 are not so limited. *See* 40 C.F.R. 220–30. The regulations have no knowledge requirements. Thus, the distinction between the civil and criminal provisions of § 1415 remains meaningful under the Government's construction of the term at issue. Civil penalties can be imposed for violations of the regulations on the basis of strict liability. Criminal penalties, however, can be imposed only if the acts, which amount to violations of the regulations, are done consciously.

The Court will next consider the relevant legislative history to determine Congress' specific intent on this issue. *See Liparota v. United States,* 471 U.S. 419, 424–26, 105 S.Ct. 2084, 2087–88, 85 L.Ed.2d 434 (1985); *Johnson & Towers, Inc.,* 741 F.2d at 665. The Senate Report on the Ocean Dumping Act specifically refers to the term "knowingly violates." "The term 'knowingly violates' refers to a conscious act or conscious omission of the offender which amounts to a violation of the law, regulation, or permit." S.Rep. No. 451, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4234, 4249. Reilly contends that this statement is ambiguous, that it was superseded by the Conference Report, and that other legislative history refers to imposing criminal liability only for "knowing and willful" violations.

The Court does not agree that the statement in the Senate Report is ambiguous. The term "conscious" modifies the term "act." Thus, the act must be done consciously, and the act must constitute a violation of the law, regulation, or permit.

Reilly admits that the Conference Report (No. 1546, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4264–76) does not address the construction of the disputed term. Thus, the Court can presume that the construction offered in the Senate Report is the appropriate construction intended by Congress.

The letters included in the legislative history were letters written to Senator Warren Magnuson, Chairman of the Senate Commerce Committee, the Committee that wrote Senate Report No. 451. The letters were written by the Administrator of the Environmental Protection Agency and an Assistant Secretary of the Interior in February and April of 1971 respectively. *See* 1972 U.S.C.C.A.N. 4257, 4259. As the Senate Report was published in November 1971 (*see* 1972 U.S.C.C.A.N. at 4234), it would appear that the proposed constructions were not adopted by the Senate Commerce Committee. In any event, the opinions of Executive Agencies expressed to Congressional committees, while meriting some weight in considering legislative history, are merely evidence of opinions which may have been considered by Congress in passing a law. Thus, the letters do not provide much support for Reilly's position.

The Court will adopt the construction of the term "knowingly violates," that has been offered by the Government. The Government must prove that Reilly consciously engaged in the acts alleged in the Information. The Government need not prove that Reilly had knowledge of the statutes at issue. Such a construction appears to be in harmony with the construction of other public welfare and environmental statutes. *See, e.g., United States v. Frezzo Brothers, Inc.,* 546 F.Supp. 713, 721 (E.D.Pa.1982) (term "willfully or negligently violates" in criminal penalty provision of Clean Water Act, 33 U.S.C. § 1319(c)(1), construed to apply to defendants' acts, not to require proof of knowledge of and specific intent to violate statute), *aff'd,* 703 F.2d 62 (3d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983); *Johnson & Towers, Inc.,* 741 F.2d at 669 (noting generally that "under certain regulatory statutes requiring 'knowing' conduct the government need prove only knowledge of the actions taken and not of the statute forbidding them"). *See also United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 560–65, 91 S.Ct. 1697, 1699–1701, 29 L.Ed.2d 178 (1971) (interpreting term "knowingly violates any such regulation" in 18 U.S.C. § 834(a), referring to regulations promulgated by Interstate Commerce Commission for the safe transmission of corrosive liquids, to require only conscious action, not knowledge of the regulations).

The Court rejects Reilly's argument that such a construction of the statute would risk punishing "wholly innocent" conduct. Reilly contends that the "material" covered under this act would include items such as "pencils, dental floss and paper clips," because the term "material" as defined in the statute "means matter of any kind or description, including but not limited to" the specifically listed items. *See* 33 U.S.C. 1402(c). Reilly cites the following passage from *International Minerals:*

> Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require, as in *Murdock, 'mens rea'* as to each ingredient of the offense.

402 U.S. at 564–65, 91 S.Ct. at 1701. The regulations referred to in *International Minerals,* however, related only to the shipment of those items, not to the dumping of those items into the ocean. Clearly, due process concerns would arise if the Interstate Commerce Commission adopted regulations which would prohibit or restrict shipment of items such as pencils, dental floss, or paper clips, and which would impose strict criminal liability for the failure to abide by those regulations. As noted by the Supreme Court in *International Minerals,*

> where, as here … dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

*Id.* at 565–66, 91 S.Ct. at 1702. The statute at issue in this case prohibits the dumping of obnoxious waste materials into the ocean. The types of materials which the statute covers are strikingly similar to those materials which are covered in the Clean Water Act. *Compare* 33 U.S.C. § 1402(c) *with* 33 U.S.C. § 1362(6). As has already been discussed, criminal liability can be imposed under the Clean Water Act without proof that a defendant had knowledge of the pertinent laws or regulations. *See Frezzo Brothers, Inc.,* 546 F.Supp. at 721.

For the foregoing reasons, the Court concludes that the Information sufficiently charges the defendant with a violation of § 1411(a).

An Order consistent with this Memorandum Opinion will be entered.